AMERICAN SURETY COMPANY OF NEW YORK V. AXTELL COMPANY.

No. 5608.   Decided March 18, 1931.
(36 S. W., 2d Series, 715.)

*Wilson, Randal & Kilpatrick,* for appellant.

Article 5160 of the Revised Civil Statutes of Texas was passed in 1913. It requires a contractor's bond on all public buildings or works, with the obligation that the contractor shall promptly make payments to all persons supplying him with labor or material in the prosecution of the work. It also provides the remedy, which is the right of intervention in any suit instituted by the state or municipality on the contractor's bond. This article was amended by the Fortieth Legislature at its first called session, the amendment to become effective ninety days after June 7, 1927, the date of adjournment. This would make the amendment effective on September 7, 1927. This date, and the date of the bond, contract, and invoices are important in determining this question. While it is true that the bond and the contract were executed on August 7, 1927, no material was sold to Nevels for use on this job until September 10, 1927, three days after the amendment became effective. On September 10, 1927, according to the invoices introduced in evidence by appellee, it sold to Nevels for use on this job a lot of black pipe for which it charged Nevels $368.09. This invoice appears at the bottom of page 51 and the top of page 52 (S. F.). It is also listed in the list of invoices as the last one on page 54. All of the balance of the invoices were made after that time, the material appearing to have been delivered at divers times thereafter, until the last invoice, numbered 32372, dated March 27, 1928, shown at the bottom of page 49. The amendment required that all claims for material be itemized and sworn to by the owner or his

authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery.of the material; and any claim filed after said thirty days shall not be secured by said bond. This article has been amended since the trial of this case, but such amendment does not concern this suit. The contract and bond were executed in August, 1927, the amendment became effective on September 7, 1927, and all of the material alleged to have been sold by the appellee was furnished after those dates. No notice was ever given and no claim was ever filed as required by the amendment. Axtell Company, not having complied with the amendment, which was in effect before any material was furnished by it and at all times while it was furnishing material, is not entitled to a judgment against the bonding company.

In accordance with the general principles governing statutes as to remedies, the obligation of a bond is not impaired by a subsequent statute regulating the remedy for its enforcement. 12 C. J., 1070, sec. 730.

The United States Supreme Court has also held that the obligation of contracts with a municipality is not impaired by subsequent changes in its charter which protect it from suit, on claims against it arising before the charter amendment, which claims have not been first presented to the city council and wholly or partly disallowed either by affirmative action or by failure to act within sixty days. In this case, the Water Works Co. had a claim against the city under an alleged contract with it executed on June 18, 1883. After that time the city charter was amended, containing the provision set out above, the charter amendment taking effect March 23, 1891. The Water Works Co. did not give notice, as required by the amended charter, but filed suit on its claim and demurrer was sustained by the trial court, affirmed by the Supreme Court of the State and by the United States Supreme Court. This case went up from the state of Wisconsin and is reported in the case of Oshkosh Water Works Co. v. The City of Oshkosh, 187 U. S., page 437, 47 L. Ed., page 249. This case has been cited with approval, as shown by Rose's Notes.

We have been unable to find identical cases decided by our Texas courts. However, it has been repeatedly held in Texas that a law changing the remedy under a contract is not unconstitutional as being retrospective or one that impairs the obligations of a contract. City of Fort Worth v. Morrow, 284 S. W., 275; Austin v. W. C. White & Co., Dallam, 434; Paschal v. Perez, 7 Texas, 348; Ward v. Hubbard, 62 Texas, 559.

In view of the foregoing authorities, it is inescapable that the amendment required Axtell's claim to be filed with either the contractor or with the county clerk thirty days after the material is delivered and is the method to be followed by Axtell in enforcing its contract and is a part

of the remedy under this bond. The obligation of Nevels was to pay for the material. The obligation of the defendant, under its bond, was to pay if Nevels did not. The remedy prior to the passage of the amendment was either to intervene in a suit already filed or to file suit itself. After the amendment, the remedy was to file its claim as provided by the amendment and then to proceed with intervention or suit. Had this been done, Hockley county and the bonding company would have had notice of this claim and some steps could have been taken to protect it out of funds belonging to Nevels himself. The benefits of the act are obvious.

Axtell Company, not having complied with the law, is not entitled to a judgment. The defendant's demurrer, therefore, was good and should have been sustained. Its motion for an instructed verdict, under the admission that the law was not complied with, was good and should have been given. This not having been done, the court should now render judgment on the facts for the defendant, and in the alternative should set the verdict aside and grant a new trial under this theory of the case.

*Schenck & Triplett* and *E. W. Bounds,* for appellee.

It is well settled in this state that where a bond is executed with the intention of parties to comply with the requirements of statutes, the terms of the statute become part of the obligation by incorporation, even though a bond itself otherwise be silent as to obligation. Globe Indemnity Co. v. Barnes, 288 S. W., 121 (Com.)

It is also well settled that where several contracts are executed at or about the same time between the same parties, concerning the same subject matter, said contracts become one contract and are construed together.

While the Court of Civil Appeals have divided the certificate into four parts there is but one question involved herein, to-wit: Is the Act of 1927 amending article 5160 retroactive in effect? And to our minds this question must be answered in the negative for the reason that no act of the Legislature is retroactive unless so intended by the Legislature, and the intentions must appear from the wording of the Act itself, and no Act of the Legislature can be retroactive in effect unless it involves the creation or change of a *remedy,* is declaratory of the existing law or is the validating Act. (See Cooley's Constitutional Limitations under Retroactive Statutes).

Counsel for appellant confuse this case with one involving a remedial act because the amendment required of the seller of material to file his account with the county clerk in order to fix liability on the bondsmen. While this requirement may be classed as a *remedy* it is and involves a *personal* act on the part of a *person* and not an act of *procedure* in the conduct of a case on trial.

Remedial statutes, those which may be retroactive, pertain to a remedy as provided by *court procedure.* By close observation it is apparent that the courts use the words interchangeably and in a way that makes the

word *remedy* when used in this connection, mean *procedure*. City of Fort Worth v. Morrow, 284 S. W., 275.

Remedial Acts of the Legislature are those acts which involve rules of evidence, venue of cases, methods of appeal, motions for new trial, etc., all of which are purely court procedure, and should not be confused with personal acts such as are necessary to fix a lien, preserve a lien, authorize a suit in forcible detainer, protest a note or bill, demand of payment, tender of payment, all of which are remedies but they are what might be termed *personal* and have no connection with *court procedure*. And any law which might change one of these *personal* remedies cannot be retro-active, even if the Legislature so intended it.

The case of Johnson v. Smith, 246 S. W., 1013, involved an amend-ment similar to the one here involved. In 1919 the Legislature passed a statute authorizing the Comptroller to employ special inheritance tax col-lectors and pay them out of the tax monies collected by them. The Legis-lature of 1922 passed a statute repealing the former law and it was held in that case that the repeal of the law did not impair the obligations of the contracts made under the former law and held the contracts binding.

Article 5523, Civ. St. of 1925, making time for sale by trustee under deed of trust four years instead of ten, held constitutional as a law, but unconstitutional as impairing obligation of contract as applied to pre-exist-ing deeds of trust. Farmers Life Ins. Co. v. Wolters, 263 S. W., 259 (Com.)

The case of Maynard v. Freeman, 60 S. W., 334, involved nearly exactly our question. In that case Freeman's horses became diseased and the county authorities had them appraised and killed and after plaintiff had filed a petition with the proper court for mandamus to compel the county judge to issue his warrant in payment for the horses, the statute was amended making it necessary in such cases to present a bill to the commissioners' court. And the court held that plaintiff was not bound to present his claim to the Commissioners' Court, since the amendment impaired his vested rights, and lessened the value of his remedy, and hence was not applicable.

In the case of Moore v. Clem, 295 S. W., 941, is a case involving an appeal from an order granting a new trial, and while the appeal was pending but prior to the submission of the case in the Court of Civil Appeals at Dallas, the Legislature amended article 2249 governing and granting appeals from judgment granting new trials, and in the amend-ment eliminated that part of the old statute which permitted such appeals, and the court held that the amendment was retroactive and the right of appeal was lost.

In other words, the change in the statute pertained to an act of court procedure and not a personal act such as filing an account with the com-

missioners' court as in the Maynard v. Freeman case and the law is retroactive.

These two cases exemplify the difference between *personal* procedure and *court* procedure, or remedies based on *personal* acts and remedies based on *court* acts. In the one case where the remedy is based on a personal act the new law does not retroact, while in the other case where the remedy is based on a court act or procedure it does retroact, or rather it may.

Now, when the bond in question was made the law governing the rights of the parties thereto, article 5160 did not require an account to be filed with the county clerk in order to fix the liability of the sureties on the bond. After the contracts for the material and the work were executed an amendment was enacted which did require that the account be filed with the county clerk within a certain time in order to fix the liability of the sureties on the bond.

Now, if this new amendment pertained to a remedy based on a personal act, then the law did not and could not retroact, but if the new requirement pertains to a remedy based on a court act or procedure, then it did retroact.

If we are correct about this position, and we think we are, then it is easy to see that the new law carried in the amendment requiring the seller of material to file his account with the county clerk, was a remedy based on a personal act and did not and could not retroact.

In order to reduce the contention that the amendment is retroactive and applies to the bond involved here, to an absurdity let us suppose that the amendment took effect thirty-five days after the material was furnished. Where would we be then? Squarely up against a statute which required an absurd thing, an impossibility, if you please, in the language of the doubting father "it could not be did".

We take the position that in case this court should disagree with our position that the amendment to article 5160 of the Revised Statutes, which took effect September 5, 1927, is not retroactive and does not apply to the contract and bond herein sued upon, then we urge the further proposition that if this court should hold said amendment retroactive that still the sureties on said bond are liable to Axtell Co., in this case for the reason that the amendment just mentioned carried the following provisions, to-wit: "Provide further that all claims for labor, etc., * * * shall be filed, etc., * * * and all claims for *material* shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the County Clerk of the County in which said work is being prosecuted within thirty days from the date of the delivery of said material and any claims filed after said thirty days shall not be secured by said bond."

The provisions of article 5160 were amended again in 1929 and the

time for filing the account was extended to ninety days and the necessity of the filing with the contractor was eliminated and the clause,—"and any claim filed after said thirty days shall not be secured by said bond," was eliminated from the new law as it exists today.

Therefore, if the first amendment is held to be retroactive, then on the same basis of reasoning, the second amendment is also retroactive and the penalty provided in the first amendment being eliminated, the sureties are still liable under the new law as it now exists.

The omission and elimination of that provision which says "any claim filed after said thirty days shall not be secured by said bond" is significant and can only mean that the Legislature intended to make the sureties liable under the present law whether the account is filed within thirty days, ninety days, or at all, and we believe that they are liable in any event.

Mr. Presiding Commissioner SHORT delivered the opinion of the court.

The following statement and certified questions are from the Court of Civil Appeals of the Seventh District:

"On August 6, 1927, M. C. Nevels entered into a contract with Hockley County to furnish the material and do the work for all necessary plumbing in the courthouse to be thereafter built at Levelland, the county seat of said county. On August 8, 1927, Nevels executed his bond as such contractor in the usual form, with the appellant surety company as surety.

"The Axtell Company filed this suit, alleging the insolvency of Nevels and sought to recover against appellant surety company a balance of $3,823.17, alleged to be due from Nevels for materials furnished him in complying with his contract with Hockley County.

"The Surety Company answered, alleging that the appellee had failed to give the statutory notice by filing an itemized statement of its account with the County Clerk of Hockley County or with the contractor within thirty days after the date of the delivery of the material, as provided by Art. 5160, as amended by the Act of the 40th Legislature at its First Called Session in June, 1927. Appellant further alleged that the account had been paid by Nevels, the principal obligor, but that the amounts paid by him and directed to be applied to the account in suit had been misapplied by the appellee to other accounts due it from Nevels. It further alleged that it had been released by reason of the fact that appellee had extended the date of payment of the account and included the amount thereof in certain notes payable monthly over a long period of time without the consent of the surety company.

"By supplemental petition the appellee alleged that the amendment to Art. 5160 was in violation of the Constitution of the State of Texas and of the Constitution of the United States, prohibiting the passage of laws.

which would impair the obligation of a contract and also violated other articles of the Constitution of the United States.

"The case was submitted to the jury upon special issues, in response to which the jury found that Nevels did not pay the Axtell Company in full for fixtures and materials used in building the Hockley County courthouse; that he still owed the Axtell Company $2,735.76; and that the Axtell Company did not accept Nevels' notes in settlement, extension or renewal of the indebtedness sued upon in this action. From a judgment entered in accordance with the verdict, the surety company has appealed.

"By Sec. 10, Art. 1 of the Constitution of the United States, it is declared that no state shall pass any law impairing the obligation of contracts and by Art. 16, Sec. 1 of the Constitution of Texas, it is also provided that no law impairing the obligation of contracts shall be made. Vernon's Anno. Texas Statutes, Art. 5160 provides that any person contracting with any county for the construction of any public building, shall execute the usual penal bond obligating him to promptly pay all persons supplying him with labor and material in the prosecution of the work. It further provides that any person, company or corporation who has furnished labor or materials used in the construction or repair of any such building and payment for which has not been made, shall have the right to intervene in any suit on the bond of the contractor to have their rights and claims adjudicated. This original act was passed in 1913. It was amended first in 1927 by the 40th Legislature (First Called Session, page 114, chapter 39, sec. 1). This amendment became effective ninety days after June 7, 1927, or on September 5, 1927. The amendment added to the original act a provision, in effect, that all claims for materials should be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted, within thirty days from the date of the delivery of said material; and any claim filed after said thirty days should not be secured by said bond. No effort was made to comply with this provision of the Act. (The Act was again amended by the 41st Legislature in 1929, but this last amendment has no application to the case before us.)

"The evidence shows that the Axtell Company furnished Nevels no materials until after Sept. 5, 1927, when the Amendment became effective.

"Being unable to agree as to the effect of the Act upon the liability of the appellant, we certify to Your Honors the following questions:

"(1) Is the Act as amended applicable to the contract of suretyship?

"(2) Does it impair the obligations of the appellant and Nevels contract in violation of Art. 1, sec. 16 of the Constitution?

"(3) Does the Act as amended operate retrospectively and require

the Axtell Company to file its claim in accordance with its provisions as a condition precedent to its right to recover upon the bond?

"(4) Under the facts and the amended Act, is the appellant Surety Company liable to the Axtell Company?"

The original law on this subject was enacted in 1913 and its provisions remained unchanged until the amendment which became effective September 5, 1927, (Laws 1927, 1st Called Sess., c. 39). This original law was incorporated in Vernon's Annotated Civil Statutes, vol. 15, page 69, as art. 5160. The law enacted in 1927 is substantially in the language of the original law, but it further provides insofar as its provisions are applicable to the questions asked that all claims for material used in the construction of any public building or public work and payment for which has not been made shall be itemized and authenticated by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of the material and that any claim filed after said thirty days shall not be secured by said bond.

Under the facts stated in the certificate, the appellee did not comply with this provision of that law. The language of the original law, as well as that of the amended law, as above stated, required the contractor, before commencing the execution of a public work in pursuance of a formal contract with the state or any of its subdivisions, to execute a bond with the additional obligation "that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in said contract." The original law, as well as the law as amended in 1927, provided further that "any person, company or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state or any municipality on the bond of the contractor, and to have their rights and claims adjudicated in said action and judgment rendered thereon." In construing the original law the adjudicated cases do not contain any suggestion that its provisions had a retrospective effect, nor indeed could there have been any basis for such suggestion, for the reason that previous to the enactment of the original law Texas had not enacted any law on this subject. Evidently the provisions of the original law were not intended by the Legislature enacting it to have a retrospective effect. When the bond was executed in this case and had been approved by the proper authorities, by virtue of its terms and the law in force at that time, there was imposed upon the surety the obligation upon default of the principal to pay all persons supplying the principal with labor and material in the prosecution of the work provided for in the contract, the value thereof to the extent of any sum not otherwise legally previously appropriated in the

discharge of the obligation to the state or subdivision. The identity of the person or persons supplying the labor and material, or either, together with the value of such labor or material so furnished, in the very nature of the situation must await the development to the prosecution of the work. As said by the Supreme Court of the United States in Guaranty Co. v. Pressed Brick Company, 191 U. S., 425, 24 S. Ct., 142, which is quoted with approval in Hess & Skinner Engineering Co. v. Turney, 110 Texas, 148, 216 S. W., 621, 622, by the Supreme Court of this state, speaking through Justice Greenwood: "The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due." By the very terms of the contract in this case, as well as the law written into the contract, it must have been contemplated by the surety that its principal in the course of the discharge of his duties under the contract would be under the necessity to procure the materials required and to obligate himself to pay for such, the reasonable value thereof. The person or corporation from whom such materials were afterwards procured and which were in fact furnished, while unknown at the time the bond was executed, was nevertheless a prospective party to such contract, and became an actual one, when the materials had been furnished by him or it, which were used in the construction of the building and payment for which had not been made by the contractor according to the terms of the agreement under which such material had been supplied and which had been used in the construction of the building. The obligation of a surety under the terms of the contract and the bond is coeval with the undertaking to perform; it originates with the contract itself, and operates anterior to the time of performance. Ogden v. Saunders, 12 Wheat, 213, 349, 6 L. Ed., 606.

So under the facts of the certificate, the appellee was protected in its rights by the provision of the contract and the bond under the law then in force as measured by the ultimate facts afterwards developed, because the facts show that the appellee did furnish the contractor material which was used in the construction of the building.

This was the effect of the original law and as the original law is the same as the law afterwards amended in 1927, it follows that the surety became liable to pay the material man the value of the material furnished and used as a matter of law.

The amendment of 1927 did not impair this right of the appellee, for the reason that the law by virtue of which the appellee was given this right was the same after the enactment of the law of 1927 as it was previous to that date. The amendment in so far as it is applicable to the facts in the certificate merely required in addition to what the law required as heretofore discussed, that whenever any person, company or corporation has furnished materials used in the construction of a public building and

payment of which has not been made, he or it shall have the right to call upon the surety for payment, provided that before doing so he or it shall have filed with the contractor or with the county clerk the claim for the materials so furnished and used, duly itemized and authenticated, within thirty days from the date of the delivery of the material. This amendment in no wise impaired the obligation of the surety to pay the claim of appellee.

The caption to the bill which was made the basis of the amendment shows that it was an act amending article 5160 of the Revised Statutes of 1925, "providing more adequate and better regulations and provisions in connection with bonds where a person or persons, firm or corporation, enter into a formal contract with this state or .its counties . * * * for the construction of any public building * * *; prescribing what bonds shall be executed in connection therewith and the obligation that they shall contain relative to making payments to all persons *supplying* labor and materials in connection with the contract; providing more particularly what *debts* shall be secured by said bonds and providing for filing claim under oath with the contractor or with the county clerk." Laws 1927, First Called Sess., chap. 39.

We have italicized certain words in the above quotation for the purpose of emphasizing the apparent fact that it was the purpose and intention of the Legislature, in amending the original law as it did, to regulate more specifically than the old law had regulated, the procedure to be followed by any person or corporation who had *furnished* materials *used* in construction of a public building, under circumstances such as are detailed in the certificate. The appellee in this case had a vested right under the facts to be protected by the provisions of the contract and the bond the moment the bond was executed and approved, provided, however, that it should be able to show that it had *furnished* material which had been *used* in the construction of the building, payment of which had not been made, and that previous to the institution of this suit, it had filed with the contractor or the county clerk its claim for material, duly itemized and authenticated, within thirty days from the date of the delivery thereof. The obligation of a bond is not impaired by a subsequent statute *regulating the remedy for its enforcement.* 12 Corpus Juris, par. 730 Paschal v. Perez, 7 Texas, 348; Ward v. Hubbard, 62 Texas, 559.

The appellee had no right to demand a recovery for any amount of the surety, until it had furnished the material which had been used in the construction of the building for which payment had not been made by the contractor, and yet it had a vested right the moment the bond had been executed and approved to make this demand of the surety when it could allege and establish the fact that it had complied with the proceedings prescribed by the law by virtue of which its vested right had

originated. The law in existence at the time the material was furnished and used in the construction of the building prescribed that in order to enforce its demand thus originating against the surety, as a prerequisite to making this demand in addition to alleging and proving that it had furnished the material which had been used in the construction of the building for which payment had not been made, the further allegation and proof that it had previous to making the judicial demand by filing the suit filed with the contractor or with the county clerk its claims for material, duly itemized and authenticated, within thirty days from the date of the delivery thereof. It was incumbent upon the appellee, in order to avail itself of the rights secured to it by the provisions of the law, to allege and prove that it had done everything which that law required it to do, in the absence of a showing that the law since right of appellee has become vested, had been so changed as to impair this right, or that it had been so changed as to make the enforcement of the right impossible by the use of reasonable diligence. All that the amendment demanded of the appellee in this case, in addition to what the original law required of him, was to file with the contractor or county clerk within thirty days from the delivery of the material an itemized and authenticated statement of its claims. This could have been done without unreasonable effort. This provision of the law is plain, simple, and its purpose obvious.

To arrive at the intention of the Legislature, in enacting the amendment of 1927, to article 5160, which was the original act of the Legislature on this subject, it is the duty, of course, to look primarily to the act itself as an entirety; and to understand the legal effect of the amendment enacted by the Legislature, it must be considered in connection with the original act, and that which had been done thereunder. A particular section of an act of the Legislature, when enacted, must be construed in view of the existence of the original statute as it stands after the amendment is introduced; it and all sections of the old law must be regarded as a harmonious whole, as connected with and naturally acting upon each other. Shipley v. School District (Texas Com. App.), 250 S. W., 160; Cole v. State, 106 Texas, 472, 170 S. W., 1036. "Words used in the original act will be presumed to be used in the same sense in the amendment. An amended act is ordinarily to be construed as if the original statute had been repealed, and a new independent act in the amended form had been adopted in its stead; or, as frequently stated by the courts, so far as regards any action after the adoption of the amendment, as if the statute had been originally enacted in its amended form. The original provisions appearing in the amended act are to be regarded as having been the law since they were first enacted, and as still speaking from that time; while the new provisions are to be construed as enacted at the time the amendment took effect. It will be presumed that the Legislature, in adopting the amendment, intended to make some change in the existing

law, and threfore the courts will endeavor to give some effect to the amendment." 36 Cyc., par. 10, p. 1165.

So the amendment of 1927, to the law of 1913, under this rule of construction did make some change in the existing law, and it is the duty of the courts to give some effect to the amendment. The effect, according to the plain import of the language used in this amendment, is merely to say to those furnishing material, under the circumstances stated in the certificate, for the construction of any public building, or the prosecution or completion of any public work, payment for which had not been made, shall have a right to recover from the contractor, or his securities, on the bond executed, the value of such unpaid material so furnished, upon the condition only that such claims shall be itemized and authenticated by the oath of the owner or his agent, and filed with the contractor, or with the county clerk of the county in which said work is being prosecuted, within thirty days within the date of said delivery.

The amendment of 1927 to the original law in so far as it is applicable to the facts stated in the certificate does not either enlarge, abridge or modify the obligation of a contract; it merely modifies the remedy by specifying the method by which the remedy shall be pursued. It does not make any substantial interference with the obligation of the contract itself. National Surety Co. v. Architectural Decorating Co., 226 U. S., 283, 33 S. Ct., 17, 20. The distinction between a law which enlarges, abridges or modifies the obligation of a contract, and a law which merely modifies the remedy, is discussed by the Supreme Court of the United States in Oshkosh Water Works Co. v. Oshkosh, 187 U. S., 437, 439, 23 S. Ct., 234, wherein it is said by that court, speaking through Mr. Justice Harlan: "It is well settled that while, in a general sense, the laws in force at the time a contract is made enter into its obligations, parties have no vested right in the particular remedies or modes of procedure then existing. It is true the Legislature may not withdraw all remdies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract, but it is equally well settled that the Legislature may modify or change existing remedies or prescribe new modes of procedure, without impairing the obligation of contract, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract."

While, as we have seen, the amendments of 1927 does not operate retrospectively, there seems to be an idea that nevertheless this amendment could not affect the appellee in this case, upon the basis that it had acquired a vested right, under the facts stated in the certificate, to make the appellant liable for the default of its principal. In order for the amend-

ment to affect appellee in a retrospective manner it must have had a fixed right, or a definite interest in the bond in question prior to the time the amendment took effect. If it did not have such right or interest, but, on the contrary this right or interest in the bond did not vest or accrue until after the amendment took effect, then clearly the amendment operated prospectively as to it, and is applicable to its claim. It is the *delivery* of the material that gives the materialman a right against the bond, and if the material was not delivered until after the amendment covering the right of said materialman became effective, then clearly the materialman's right is controlled by the amendment. Under the facts stated in the certificate there was no previous contract existing between the appellee and the appellant. There was no contractual obligation on the part of appellant to appellee, and the bond was of no benefit to the appellee until it occupied the position of a materialman, and it did not occupy this position until the time it actually delivered the material. Of course, as was said by Justice Story (2 Gall., 138, Fed. Cas. No. 13156, quoted with approval in Sherwood v. Fleming, 25 Texas Suppl., 408: "Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed, must be deemed a retrospective law." This quotation is also cited with approval in Sturges v. Carter, 114 U. S., 511, 5 S. Ct., 1014. The question is discussed also in Hamilton v. Flinn, 21 Texas, 713, wherein the quotation from Justice Storey is again cited with approval, and wherein it is stated that: "Laws do not have a retroactive effect, although they may benefit individuals and the public, unless they prejudice the right of a third person already acquired. The test then, of retroactivity, is not whther there is a hope, expectancy or a more inchoate right, but whether a vested right 'to possess certain things according to the laws of the land' is impaired or defeated." In treating the subject of retroactivity, is not whether there is a hope, expectancy or a more inchoate retrospective law is one that relates back to, and gives to, a previous transaction some different legal effect from that which it had under the law when it occurred. In this connection the terms 'retrospective' and 'retroactive' are used interchangeably." The general law is that statutes operate prospectively, but they may operate retrospectively when it is apparent that such was the intention, provided no impairment of vested rights result. Cox v. Robinson, 105 Texas, 426. We only mention this rule to avoid a possible conclusion that we have indicated that no statute could operate retrospectively, since the facts stated in the certificate, under our construction of the legal questions involved, do not embrace this question. According to the facts stated in the certificate at the time this amendment took effect, the appellee had furnished no material, and of course the contractor owed it no money, and consequently it had no right or interest in

the bond. The entire matter revolves around the point as to the time when an interest or right became fixed in the bond, and the only method of ascertaining when such interest or right became fixed is by ascertaining the time when the material was delivered.

In concluding its opinion in National Surety Co. v. Architectural Decorating Co., supra, the court uses this language: "In the case now before us we agree with the Minnesota Supreme Court in the view that the requirement of a preliminary notice to the obligors as a condition precedent of an action upon the bond, affects the remedy and not the substantive agreement of the parties. And although the statute as it stood when the bond was given * * * must be treated as if written into the contract, it still imposed a condition not upon the obligation, but only upon the remedy for breach of the obligation. Therefore, the subsequent statute * * * effected merely a change in the remedy, without substantial modification of the obligation of the contract."

In the case from which the above quotation was taken, the facts are substantially the same as the facts in this case, except that at the time the bond was executed the law provided that "no action shall be maintained on any such bonds unless within ninety days after performing the last item of work, or furnishing the last item of skill, tools, machinery, or material, the plaintiff shall serve upon the principal and his sureties a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof," while at the time the suit was filed on the claim this law was amended so as to require the notice of claim to be given ninety days "after the completion of the contract and acceptance of the building by the proper public authorities" instead of within ninety days "after performing the last items of work or furnishing the last item of skill, tools, machinery or material". This change in the law went into effect before the company had furnished the materials upon which the action was based and at the time the action was commenced the person furnishing the material had not given notice in time to comply with the provisions of the law as it existed at the time the bond was executed, but did give such notice in time to comply with the amended law. The Supreme Court of the United States held that the change in the law as above indicated did not impair the obligation of the contract, but only modified the remedy by changing the method by which the right could be enforced. Cooley's Const. Lim., pars. 293, 374; Farmers Life Insurance Co. v. Wolters (Texas Com. App.), 10 S. W. (2d) 698; Frank v. State Bank & Trust Co. (Texas Com. App.), 10 S. W. (2d) 704.

We therefore recommend that question No. 1 be answered in the affirmative; that questions Nos. 2 and 4 be answered in the negative, and that question No. 3 be answered that the Act as amended does not operate retrospectively, but that it did require appellee to file its claim

in accordance with its provisions as a condition precedent to its right to recover upon the bond.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.