OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 10, 1999

The Honorable James M. Kuboviak
Brazos County Attorney
300 East 26th Street
Bryan, Texas 77803

Opinion No. JC-0019

Re: Whether a sheriff of a county governed by article 2372p-3 of the Revised Civil Statutes is required by Code of Criminal Procedure article 17.11, section 2 to refuse the bond of a bondsman licensed in the county when on notice that the bondsman is in default on a bond in another county (RQ-1134)

Dear Mr. Kuboviak:

You ask whether a sheriff of a county governed by article 2372p-3 of the Revised Civil Statutes is required by Code of Criminal Procedure article 17.11, section 2 to refuse the bond of a bondsman licensed in the county when on notice that the bondsman is in default on a bond in another county. We conclude that a sheriff of a county governed by article 2372p-3 may not unilaterally refuse the bond of a bondsman licensed in the county on the basis of the bondsman's default on a bond in another county.

Your query arises from the interaction of a number of Code of Criminal Procedure provisions and article 2372p-3. Code of Criminal Procedure article 15.18 provides that a person arrested under a warrant issued in a county other than the one in which the person is arrested shall be taken before a magistrate in the county of arrest who shall take bail, if allowed by law, and immediately transfer the bond to the court having jurisdiction of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 15.18 (Vernon 1977). This office has concluded that in the case of an arrest on an out-of-county warrant under Code of Criminal Procedure article 15.18, the sheriff in the county of arrest is required by article 2372p-3 to accept and approve a bond offered by a bondsman licensed in the county of arrest. *See* Tex. Att'y Gen. Op. No. JM-271 (1984). Thus, by operation of Code of Criminal Procedure article 15.18, the bond of a bondsman licensed in one county may be transferred to a court in a county where the bondsman is not licensed.

Your question involves a bondsman licensed and currently in good standing with the Brazos County Bail Bond Board, who has signed as surety on bonds for defendants arrested in Brazos County on Tarrant County arrest warrants. The bondsman is not licensed in Tarrant County. You provide the following facts: The bondsman signed as surety on a bond with defendant X who was arrested in Brazos County on a Tarrant County arrest warrant in May 1997. In March 1998, the

Brazos County Sheriff received a notice from the Tarrant County Clerk stating that the bondsman was in default on the May 1997 bond. In April 1998, the sheriff notified the bondsman that the bondsman would be disqualified from making bail bonds in Brazos County if he did not satisfy the Tarrant County judgment within twenty-one days. During that period, defendant Y was arrested in Brazos County on a Tarrant County arrest warrant. The bondsman signed as surety on a bond with defendant Y. The Brazos County Sheriff approved the bond, forwarded it to Tarrant County, and released defendant Y from custody. Tarrant County returned the bond to the Brazos County Sheriff because of the prior default and issued another warrant for the arrest of defendant Y. Upon the expiration of the twenty-one day period, the Brazos County Sheriff notified the bondsman that he was disqualified from signing bonds in Brazos County because the Tarrant County judgment remained unsatisfied.

You ask the following:

> Does notification by the clerk of the court of one county to a sheriff . . .
> in a second county that a surety is in default on a bond in the first county
> create an immediate duty on the part of the official in the second county to
> disqualify the surety who is in default from signing on bonds, pursuant to the
> Code of Criminal Procedure art. 17.11, § 2?

Letter from Honorable James M. Kuboviak, Brazos County Attorney, to Attorney General Dan Morales (Apr. 30, 1998) (on file with Opinion Committee). You also ask whether the answer depends upon whether "the defaulting surety is licensed and in good standing with the bail bond board of the second county under [article] 2372p-3." *Id.* Your questions focus on the duties of the sheriff in the second county. You do not ask about the authority of officials in the first county, the county that issued the arrest warrants, with respect to bonds executed in the second county and then transmitted to the county pursuant to Code of Criminal Procedure article 15.18. That subject raises questions about the relationship between article 2372p-3 and Code of Criminal Procedure article 15.18 that we need not resolve here.

Your questions require us to examine the relationship between Code of Criminal Procedure chapter 17 provisions governing the taking of bail bonds throughout the state and article 2372p-3, a more recent statute[1] governing the execution of bail bonds in certain counties, including Brazos County. The Code of Criminal Procedure authorizes an officer taking a bail bond to determine the sufficiency of the security offered by a surety on a bail bond; it does not, however, provide for the licensing of bondsmen or authorize the officer taking the bond to require the surety to post collateral. *See* TEX. CODE CRIM. PROC. ANN. arts. 17.11-.14 (Vernon 1977); *Castaneda v. Gonzalez*, No. 13-97-897-CV, slip op. at 7-8 (Tex. App.–Corpus Christi 1998, no pet.); Tex. Att'y Gen. Op.

---

[1]Article 2372p-3 was first enacted in 1973. *See* Act of May 18, 1973, 63d Leg., R.S., ch. 550, 1973 Tex. Gen. Laws 1520. Code of Criminal Procedure article 17.11, the provision at the heart of your query, was enacted in 1965 and last amended in 1967. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317; Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 14, 1967 Tex. Gen. Laws 1732, 1736.

No. DM-483 (1998) at 7-8. While the sufficiency of a bond is evaluated on a case by case basis, the officer taking the bond is authorized to consider other bonds executed by the surety. *Id.* In addition, Code of Criminal Procedure article 17.11, section 2 disqualifies a surety in the following circumstances:

> Provided, however, any person who has signed as a surety on a bail bond and is in default thereon shall thereafter be disqualified to sign as a surety so long as he is in default on said bond. It shall be the duty of the clerk of the court wherein such surety is in default on a bail bond, to notify in writing the sheriff, chief of police, or other peace officer, of such default. A surety shall be deemed in default from the time the trial court enters its final judgment on the scire facias until such judgment is satisfied or set aside.

TEX. CODE CRIM. PROC. ANN. art. 17.11, § 2 (Vernon 1977). The Tarrant County Clerk's notice to the Brazos County Sheriff was issued under the authority of article 17.11, section 2. You believe that article 17.11, section 2 disqualifies a surety from acting as a surety in any county of the state as does, apparently, the Tarrant County Clerk. Nothing in article 17.11, section 2 suggests that the disqualification is limited to the county of the default. We believe this construction of article 17.11, section 2 is reasonable and consistent with section 1, which authorizes the officer taking a bail bond to consider the sufficiency of the security offered by a surety based on property owned by the surety anywhere in the state. *See id.* § 1 (requiring that surety be resident of this state and have "property therein liable to execution worth the sum for which he is bound").

In a county governed by article 2372p-3, no person may act as a bondsman in the county except a person who is licensed or, in certain limited circumstances, attorneys. TEX. REV. CIV. STAT. ANN. art. 2372p-3, § 3(a) (Vernon Supp. 1999). "Any person desiring to act as a bondsman in any court of the county shall file with the County Bail Bond Board a sworn application for a license." *Id.* § 6(a). The authority to license and discipline bondsmen is vested in the county bail bond board. *Id.* §§ 6, 8, 9, 10. Section 14 of article 2372p-3 provides that the sheriff "shall accept or approve a bond posted by a licensed bondsman only in accordance with this Act and the rules prescribed by the board, but a sheriff may not refuse to accept a bail bond from a licensed bondsman who meets the requirements of [section 6(a)(4) and (5)] of this Act," which require a bondsman to post security with the county. *Id.* § 14.[2] Article 2372p-3, section 14 has been held to preclude a sheriff from

---

[2]Subsections (a)(4) and (a)(5) of section 6 provide that to apply for a license, an applicant must submit, among other things, a statement listing nonexempt real estate owned by the applicant that the applicant intends to convey in trust to the board and a statement indicating the amount of cash (or cash equivalent) which the applicant intends to place on deposit with the county treasurer to secure payment of any obligations incurred by the applicant in the bonding business if the license is granted. TEX. REV. CIV. STAT. ANN. art. 2372p-3, § 6(a)(4), (5) (Vernon Supp. 1999). Upon tentative approval of the license, the applicant must deposit "with the county treasurer of the county in which the license is to be issued [the cash] . . . to be held in a special fund to be called the bail security fund" or must execute in trust to the board deeds to the property listed in the applicant's statement, "the condition of the trust being that the property may be sold to satisfy any final judgment forfeitures that may be made in bonds on which the licensee is surety after such

(continued...)

unilaterally refusing to accept a bond from a licensed bondsman; a sheriff may refuse a licensed bondsman's bond *only if* the bondsman does not meet the security requirements of article 2372p-3. *See Font v. Carr*, 867 S.W.2d 873, 882 (Tex. App.–Houston [1st Dist.] 1993, writ dism'd w.o.j.) ("When a bondsman has met [article 2372p-3's] requirements, a sheriff may not question his solvency or refuse his bonds."); Tex. Att'y Gen. Op. Nos. DM-483 (1998) at 5; JM-1057 (1989) at 1-2 (sheriff may not refuse to accept bond of licensed bondsman); *see also* TEX. GOV'T CODE ANN. § 311.016(5) (Vernon 1998) (providing that generally the phrase "'[m]ay not' imposes a prohibition and is synonymous with 'shall not'"). Thus, section 14 of article 2372p-3 precludes a sheriff from unilaterally refusing a bond from a bondsman licensed in the county on the basis that the bondsman is in default on a bond in another county.

We believe that in the circumstances you describe, Code of Criminal Procedure article 17.11, section 2 and article 2372p-3 conflict. Article 17.11, section 2 disqualifies a surety who is in default on a bail bond from signing as a surety during the period of default anywhere in the state and, in effect, requires any sheriff to refuse to accept a bond from such a surety. Article 2372p-3, section 14, however, precludes a sheriff from unilaterally refusing a bail bond from a bondsman licensed in the county on this basis. Article 2372p-3 is the more recent[3] and "more particular statute. It applies only in counties that have a bail bond board, while article 17.14 applied in every Texas county before the legislature enacted article 2372p-3. Thus, article 2372p-3 controls when in conflict with the more general regulatory provisions of the Code of Criminal Procedure." *Font*, 867 S.W.2d at 882. We believe a court would hold that article 2372p-3, section 14 prevails over article 17.11, section 2. *See id.* at 881-82 (holding that article 2372p-3 provisions governing solvency of bondsmen prevail over Code of Criminal Procedure article 17.14); *see also Klevenhagen v. International Fidelity Ins. Co.*, 861 S.W.2d 13, 18 (Tex. App.–Houston [1st Dist.] 1993, no writ) (Insurance Code provisions governing solvency of corporate sureties prevail over Code of Criminal Procedure article

---

[2](...continued)

notice and upon such conditions as are required by the Code of Criminal Procedure, 1965, as amended, in bond forfeiture cases." *Id.* § 6(f)(1), (2). "No bondsman may execute, in any county, bail bonds that in the aggregate exceed 10 times the value of the property held as security on deposit or in trust . . . . A county officer or employee designated by the board shall maintain a current total . . . and no further bonds may be written by or accepted from the bondsman when the limit is reached." *Id.* § 6(g). In addition, "[w]hen a bondsman's total liability on judgments nisi reaches two times the same amount as he has on deposit as security, no further bonds may be written until the bondsman posts additional security . . . ." *Id.* "The cash deposit or the funds realized from the trust shall be used to pay the final judgments of any bail forfeitures that result from the licensee's execution of a bail bond, if the licensee fails to satisfy the judgment within 30 days after a final judgment of forfeiture." *Id.* § 6(h). Section 10 provides that the board may, with no notice or hearing, immediately suspend the license of a licensee who fails to maintain a security deposit at the ratio required by section 6(g). "Once the proper ratio is regained, the suspension shall be immediately lifted." *Id.* § 10(f). Section 10 also provides that the board "shall revoke the license with prior notice or hearing if the licensee fails to pay any final judgment connected with the licensee's bonding business within 30 days and there is not sufficient property held as security to satisfy the final judgment." *Id.*

[3]Code of Criminal Procedure article 17.11, section 2 was enacted in 1965 and last amended in 1967. *See supra* note 1. Article 2372p-3 was enacted in 1973 and significantly amended in 1981. *See id. & infra* note 5. Section 14 was added to article 2372p-3 in 1981. *See infra* note 5.

17.13 with regard to collateral posted by corporate sureties); TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998) (where general and special provisions conflict and are irreconcilable, special provision generally prevails). For this reason, the Brazos County Sheriff may not unilaterally refuse the bonds of a bondsman who is licensed and in good standing with the Brazos County Bail Bond Board on the basis that the bondsman is in default on a bond in Tarrant County.

You urge us to conclude that article 17.11, section 2 prevails over article 2372p-3 and authorizes the sheriff to disqualify the licensed bondsman, relying primarily upon *Burns v. Harris County Bail Bond Board*, 663 S.W.2d 615 (Tex. App.–Houston [1st Dist.] 1983, no writ). We decline to do so for the following reasons.

In *Burns*, a bondsman who had two outstanding bond forfeiture judgments against him in Harris County trial courts challenged a policy adopted by both the Harris County Bail Bond Board and the sheriff that "they would no longer accept bonds from any surety who was in default on a bond forfeiture judgment." *Burns*, 663 S.W.2d at 616. The bondsman argued that the disqualification policy, which was based on the authority of article 17.11, section 2, suspended his license without notice and a hearing as required by article 2372p-3. The court opined that the board and sheriff had not suspended the bondsman's license: "As soon as he satisfies the judgments against him, he may write new bonds without having to apply for a new license or a renewal [license]" under article 2372p-3. *Id.* The court also rejected the bondsman's argument that article 17.11, section 2 had been superseded by article 2372p-3, section 9(b)(6), which authorizes a bail bond board to suspend or revoke a license for "failing to pay within 30 days any final judgment rendered on any forfeited bond," stating:

> Once again, [the bondsman] confuses license suspension with a temporary forfeiture of his authority to sign as a surety on new bonds. If, after 30 days, [the bondsman] did not pay off his obligations on his final judgments, the licensing board was authorized to consider suspending or revoking his license under section 9(b)(6) of the licensing act. The two sections are not facially in conflict, and we must construe them to avoid needless conflict.

*Id.* at 617.

*Burns* is distinguishable from the situation that gives rise to your query for two reasons. First, *Burns* considers a policy adopted by the Harris County Bail Bond Board *and* the county sheriff. It does not address unilateral action on the part of the sheriff. *See Font*, 867 S.W.2d at 882 n.5 (distinguishing *Burns* on basis that it dealt with action of both sheriff and bail bond board rather than "the right of the sheriff, acting alone, to refuse to accept bonds"). Clearly, given section 14 of article 2372p-3, a sheriff may not unilaterally adopt a policy disqualifying licensed bondsmen who are in compliance with the article 2372p-3 security requirements. *See id.* (faulting *Burns* for failing to address section 14 of article 2372p-3, "which specifically prohibits the sheriff from refusing bonds from a bondsman in compliance with the Act. Because the *Burns* opinion did not construe section

14, the part of the statute that we rely on most heavily today, *Burns* does not control the present case."). Second, *Burns* considers the authority of Harris County officials to take action against a bondsman on the basis of bond forfeiture judgments rendered by Harris County courts. *Burns* does not address the authority of a sheriff or a bail bond board in an article 2372p-3 county to take action regarding a licensee's out-of-county bond forfeiture. Finally, we question the precedential authority of *Burns* given that the same court later expressly declined to rely on it in *Font*. *See id.*

You do not ask and we do not resolve whether a bail bond board is authorized to adopt a policy disqualifying a licensed bondsman based on a default on a bond in another county. As noted above, section 9(b)(6) of article 2372p-3 authorizes a bail bond board, after notice and a hearing, to suspend or revoke a license for "failing to pay within 30 days any final judgment rendered on any forfeited bond in any court of competent jurisdiction *within the county of the licensee*." TEX. REV. CIV. STAT. ANN. art. 2372p-3, § 9(b)(6) (Vernon Supp. 1999) (emphasis added). We believe that section 9(b)(6), in referring to the "county of the licensee," authorizes a bail bond board to suspend or revoke a license only because of a bond forfeiture within the county and not on the basis of a bond forfeiture in any other county in the state. This construction is supported by the provision's history. When article 2372p-3 was first enacted in 1973, section 9(b)(5) authorized a bail bond board to suspend or revoke a license for "failing to pay within 30 days any final judgment rendered on any forfeited bond in any court of competent jurisdiction *within this state*."[4] The legislature amended and renumbered this provision in 1981, changing "within this state" to "within the county of the licensee."[5] This amendment indicates that the legislature intended section 9(b)(6) to preclude a bail bond board from suspending or revoking a bondsman's license on the basis of an out-of-county forfeiture.[6]

In Attorney General Opinion JM-1057, this office addressed a similar question—whether a bail bond board has any authority to collect on a bond executed in another county by one of its licensed bondsmen. *See* Tex. Att'y Gen. Op. No. JM-1057 (1989) at 3. In concluding that a

---

[4]*See* Act of May 18, 1973, 63d Leg., R.S., ch. 550, § 9, 1973 Tex. Gen. Laws 1520, 1524 (emphasis added).

[5]*See* Act of May 29, 1981, 67th Leg., R.S., ch. 312, § 9, 1981 Tex. Gen. Laws 875, 882.

[6]Texas courts recognize a presumption that an amendatory enactment intends to change legal rights. *See, e.g., Ex parte Trahan*, 591 S.W.2d 837, 842 (Tex. Crim. App. 1979) ("In enacting an amendment the Legislature is presumed to have changed the law, and a construction should be adopted that gives effect to the intended change, rather than one that renders the amendment useless.") (citations omitted); *American Sur. Co. v. Axtell Co.*, 36 S.W.2d 715, 719 (Tex. 1931) ("'It will be presumed that the Legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment.' [I]t is the duty of the courts to give some effect to the amendment.") (citation omitted). We are not aware of anything that would rebut this presumption in this case, such as contrary evidence indicating that the legislature merely intended the 1981 amendments to article 2372p-3, section 9(b)(5) to clarify existing law. *See, e.g., Texas Home Management, Inc. v. Texas Dep't of Mental Health & Mental Retardation*, 953 S.W.2d 1, 7 (Tex. App.—Austin 1997, pet. denied) (presumption rebutted by evidence that amendment was intended to interpret statute in accordance with agency interpretation); *Adams v. Texas State Bd. of Chiropractic Exam'rs*, 744 S.W.2d 648, 656 (Tex. App.—Austin 1988, no writ) (presumption rebutted by evidence that amendment reiterated courts' interpretation of act).

bail bond board lacked authority to do so, the opinion pointed out the following features of article 2372p-3:

> The license granted an applicant by the county bail bond board is to act as a bondsman <u>in any court of the county</u>. V.T.C.S. art. 2372p-3, § 6(a). Section 9(b) of article 2372p-3 authorizes the board, after notice and hearing, to suspend or revoke a license for a number of designated reasons, one of which is "failing to pay within 30 days any final judgment rendered on any forfeited bond in any court of competent jurisdiction <u>within the county of the licensee</u>.["] (Emphasis added.) Section 5(f)(1) of article 2372p-3 provides that the county bail bond board has the power and duty to "enforce this Act within the county."

*Id.* (emphasis in original). This office concluded that a county bail bond board "is not empowered by the act to grant a license to an applicant to act as a bondsman in another county nor does the board have any authority or control over the collection of a bond given in another county by such bondsman." *Id.* Attorney General Opinion JM-1057 indicates that a county bail bond board has limited authority regarding bonds given by its licensees in other counties.

We cannot predict whether a court would uphold a bail bond board policy temporarily disqualifying a bondsman for the period of time he is in default on a bond in another county. On the one hand, such a policy would appear to conflict with section 9(b)(6), which this office has previously suggested precludes license suspensions and revocations based on out-of-county forfeitures. *See id.* On the other hand, a court that accepted the *Burns* court's distinction between temporary disqualifications and license suspensions might uphold such a policy. As noted above, however, *Burns*, a no writ case, has been cited in just one subsequent judicial opinion, which criticizes and distinguishes it. *See Font*, 867 S.W.2d at 882 n.5 (distinguishing *Burns* and criticizing it for failing to address article 2372p-3, section 14).

As you point out, the Code of Criminal Procedure provides that a person who is arrested on an out-of-county warrant for a bailable offense is entitled to bail in the county of arrest and that the bond must be transmitted to the court having jurisdiction of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 15.18 (Vernon 1977). Given that the Code of Criminal Procedure expressly contemplates that bail bonds will be transmitted between counties, you contend, a bondsman's commitment to secure the presence of the defendant in court should be enforced in every county. We are sympathetic to your concerns. It may be that article 2372p-3, with its focus on bondsmen's security on deposit in the licensing county, *see supra* note 2, does not adequately address the transfer of bonds between counties and should be amended to authorize a bail bond board to suspend or revoke the license (or to authorize the sheriff or other official taking a bail bond to refuse the bond) of a bondsman who is in default on a bond in another county, particularly when the bond was written in the county and then transmitted elsewhere. The power to amend article 2372p-3 to address transfers of bonds between counties, however, lies with the legislature, not this office.

## S U M M A R Y

A sheriff of a county governed by article 2372p-3 of the Revised Civil Statutes may not unilaterally refuse the bond of a bondsman licensed in the county on the basis that the bondsman is in default on a bond in another county.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General